UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| TROY ANGELO GONZALEZ,<br><br>               Petitioner,<br><br>          v.<br><br>R. JOHNSON, Warden,<br><br>               Respondent. | Case No. 5:20-cv-00491-RGK-JDE<br><br>ORDER OF DISMISSAL |

Petitioner Troy Angelo Gonzalez ("Petitioner") filed a pro se Petition for Writ of Habeas Corpus by a Person in State Custody (Dkt. 1, "Petition" or "Pet.") pursuant to 28 U.S.C. § 2254, raising a single purported ground, alleging a Fourteenth Amendment violation stemming from a denial by California state courts of Petitioner's post-judgment "Petition to Recall a Sentence pursuant to Penal Code 1170.126." Pet at 5.

Under Rule 4 of Rules Governing Section 2254 Proceedings for the United States District Court ("Habeas Rules"), the Court must review the Petition and, if it plainly appears from the Petition and any attached exhibits that the Petitioner is not entitled to relief, the Court must dismiss the Petition.

Having reviewed the Petition, for the reasons set forth below, the Court finds Petitioner is not entitled to relief and orders the Petition be dismissed.

# I.

## PROCEDURAL HISTORY

On November 11, 1988, Petitioner was convicted of burglary and sentenced to state prison for two years. People v. Troy Angelo Gonzalez, 2019 WL 1760554, at *1 (Cal. Ct. App. Oct. 16, 2007) (unpublished). He was paroled in January 1989; on January 29, 1990, he pleaded guilty to 20 counts of first degree burglary involving 20 elderly victims, on separate occasions, and three counts of sexual battery against three of those victims. Id. The superior court sentenced Petitioner to 21 years in state prison on those convictions. Id. Petitioner was released on parole and had that parole revoked twice. Id.

On February 24, 2003, Petitioner was again released on parole, after which he repeatedly informed him in writing and orally of his legal duty to register as a sex offender. Id. However, Petitioner failed to do so. Id. His parole agent could not locate Petitioner between April 21 and May 14, 2003. Separately, Petitioner was cited in the City of Hemet on March 20, 2003, a city he had no permission to be in as several of the homes he had burglarized were in Hemet. Id. Officers twice arrested Petitioner for drug offenses and apparently also arrested him on parole violations on May 14, 2003. Id.

Petitioner was thereafter charged with two counts of felony failure to register as a sex offender, with allegations of a prior prison term and 22 prior strike convictions. Id. In March 2005, a jury in the Riverside County Superior Court convicted Petitioner of one count of failure to register as a sex offender. Id.; Pet. at 2. Petitioner thereafter admitted that he had served one prior prison term and had suffered 21 prior strike convictions. Gonzales, 2019 WL 1760554 at *1. The superior court denied Petitioner's motion to strike 21 of the prior strike convictions and, on March 18, 20105, sentenced Petitioner to 26 years to life in state prison. Id. Petitioner appealed the denial of him motion to strike his prior convictions and the California Court of Appeal affirmed. Id.

On January 17, 2013, Petitioner filed a petition for writ of habeas corpus in the superior court seeking resentencing pursuant to Cal. Penal Code section 1170.126. Id. On January 24, 2013, the trial court denied Petitioner's petition. Id. On September 6, 2013, Petitioner filed supplemental points and authorities in support of his petition for resentencing and the trial court, apparently inclined to reconsider its previous denial, ordered multiple continuances of the matter. Id. On May 22, 2015, Petitioner requested a stay of the proceedings until resolution by the California Supreme Court of the issue of the standard for determining dangerousness pursuant to Cal. Penal Code section 1170.126, which the trial court granted.

On December 22, 2017, Petitioner filed a "Proposition 36 sentencing/resentencing brief" arguing he was eligible for resentencing unless the People proved he posed an unreasonable risk to public safety, which, he argued, the People could not do. Id. On the same day, the People filed opposition to Petitioner's petition, contending the trial court should deny the petition because Petitioner posed an unreasonable risk of danger to public safety. Id. The People simultaneously submitted five volumes of supplemental clerk's transcripts containing Petitioner's administrative record while imprisoned. Id. After a hearing and argument, on January 26, 2018, the state trial court denied the petition. Id.; Pet at 4.

Petitioner appealed the denial of his petition to the California Court of Appeal and on April 22, 2019, the court of appeal affirmed the denial of the petition in a six-page unpublished opinion, including a detailed discussion of the trial court's determination of dangerousness as it related to the application of California's Proposition 36 and the conduct of Petitioner while in prison that supported the trial court's findings. Gonzalez, 2019 WL 1760554 at *1-6. The Court sets forth the discussion section of the California Court of Appeals decision in full, noting references to defendant are to Petitioner:

3

Defendant contends the court abused its discretion in denying defendant's petition by finding defendant would pose an unreasonable risk of danger to public safety. Specifically, defendant maintains the court misinterpreted the phrase "risk of danger to public safety" such that its ruling was based on inapplicable law. We disagree.

Defense counsel below conceded that defendant had an "admittedly significant discipline" record while incarcerated. Nonetheless, defense counsel argued defendant's disciplinary record consisted exclusively of multiple incidents of indecent exposure which were neither violent themselves nor indicative of a violent propensity. The People maintained that defendant's multiple behavioral issues while incarcerated when viewed through the prism of defendant's prior criminal history reflected that he had a propensity to pose an unreasonable risk of danger to public safety.

The court noted that, in order to make a dangerousness determination, it was incumbent upon it to consider defendant's criminal background, what led to his imprisonment, and what he had been doing while imprisoned. The court reviewed our opinion from defendant's appeal of his underlying conviction, specifically quoting sections which reflected defendant's criminal history prior to the underlying conviction and some of the circumstances of the underlying conviction. The court reviewed, in depth, the circumstances of five of defendant's administrative rule violations while noting, twice, "there are more." Contrary to defense counsel's argument, the court did not believe defendant's administrative disciplinary proceedings for masturbation were simply attempts to "release [himself] within a situation where he's unable to find

4

privacy."[4] The court noted: "I believe he's done it in order to exhibit and exercise control over people who don't have an option. It looks like they're women who are unable to leave or otherwise to avoid the circumstances, and that is remarkably similar to the circumstances of the burglaries and sexual assaults . . . ."

> [4] As described more fully below, defendant's substantial administrative record of rule violations primarily consisted of indecent exposures during which defendant would repeatedly masturbate while calling attention to himself primarily to female staff members at whom he sometimes yelled profanities and threats. The victims described feeling "disrespected and disgusted," "disgust[ed] and very demean[ed]," "violated and thoroughly disgusted," "shocked and disgusted," and "disgusted and offended."

The court found defendant's sexual assaults upon elderly women in his underlying convictions were done "out of violence and control, and there is substantial evidence to believe that nothing would change; that he does present a danger— unreasonable risk of danger to society if he were to be released." Contrary to defense counsel's definition, the court did not define violence as "hitting or shooting or anything that's necessarily going to leave a physical mark." Rather, "this kind of sexual violence is—this kind of sexual conduct is violence. It's violence to the women who are his victims. And, frankly, it's violence to everybody else in society who's left either in fear of this kind of an assault or left as a suspect because women are in fear of this kind of assault." The court denied the petition.

"In November 2012, California voters enacted Proposition 36, the Three Strikes Reform Act of 2012 (Proposition 36 or Three Strikes Reform Act). With some exceptions, Proposition 36

5

modified California's 'Three Strikes' law to reduce the punishment imposed when a defendant's third felony conviction is not serious or violent. [Citation.] It also enacted a procedure governing inmates sentenced under the former Three Strikes law whose third strike was neither serious nor violent, permitting them to petition for resentencing in accordance with Proposition 36's new sentencing provisions. [Citation.] The resentencing provisions provide, however, that an inmate will be denied resentencing if 'the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' [Citation.] Proposition 36 did not define the phrase 'unreasonable risk of danger to public safety.'" (*People v. Valencia* (2017) 3 Cal.5th 347, 350.)[5]

> [5]Neither party, either below or on appeal, contests defendant's preliminary eligibility for resentencing, i.e., the parties do not contest that defendant's commitment offense, failure to register as a sex offender, is neither violent nor serious for purposes of section 1170.126. Section 1170.126, subdivision (e) provides that an inmate is eligible for resentencing if the offense for which the court sentenced the inmate was not a so-called "super strike" or serious or violent felony. Since failure to register as a sex offender is neither a so-called "superstrike" nor a serious nor violent felony, defendant is preliminarily, statutorily eligible for resentencing pursuant to section 1170.126.

"In exercising its discretion to deny resentencing, the court has broad discretion to consider: (1) the inmate's 'criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes'; (2) his or her 'disciplinary record and record of rehabilitation while incarcerated'; and (3)

6

'[a]ny other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety.' [Citation.] Thus, as the Legislative Analyst explained in the Voter Information Guide, '[i]n determining whether an offender poses [an unreasonable risk of danger to public safety], the court could consider any evidence it determines is relevant, such as the offender's criminal history, behavior in prison, and participation in rehabilitation programs.' [Citation.]" (*People v. Valencia*, *supra*, 3 Cal.5th at p. 354.)

"We, therefore, review that determination for abuse of discretion. Of course, if there is no evidence in the record to support the decision, the decision constitutes an abuse of discretion. [Citation.]" (*People v. Buford* (2016) 4 Cal.App.5th 886, 895.) "[T]he People have the burden of establishing, by a preponderance of the evidence, facts from which a determination resentencing the petitioner would pose an unreasonable risk of danger to public safety can reasonably be made." (Id. at p. 899.) "'"[T]he relevant inquiry is whether [a petitioner's prior criminal and/or disciplinary history], when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years [later]. This inquiry is . . . an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude. [Citation.]" [Citation.]' [Citation.]" (*Id.* at p. 914.)

The court acted within its discretion in denying defendant's petition. As the court recounted, defendant's underlying criminal

7

history was substantial and violent. Defendant was convicted of burglary and sentenced to two years of imprisonment in November 1988. After serving approximately two months of his sentence, defendant was paroled and "went on a crime spree." That crime spree consisted of offenses involving first degree burglary against 20 elderly victims on 20 separate occasions, three of the elderly victims against whom he was convicted of committing sexual battery.

The first sexual battery involved a situation wherein defendant entered the 77-year-old victim's home, grabbed her from behind, took her to the bed, and pushed her onto it. Defendant touched her breasts and began to undo his pants. The victim said she was too old. Defendant left the home with the victim's purse, which contained her credit cards and $ 90 in cash. The second sexual battery involved an 83-year-old victim who was in her kitchen when she heard a noise, looked up, and saw defendant. Defendant grabbed her as she ran and knocked her to the ground. As she screamed, defendant told her to "'[s]hut up or I'll kill you.'" Defendant pushed her into the bedroom, where he tried to pull her pants off. Defendant forced the victim to feel his privates and said, "'I'll stick you with this if you don't give me all your money.'" Defendant grabbed her purse and fled.

The third sexual battery involved an 80-year-old victim who was sleeping when she felt the covers ripped off her. Defendant cupped his hand over her vagina. The victim's screams caused defendant to flee. Defendant stole the victim's nightgown and purse. The nightgown was recovered in the bushes outside the victim's residence. Thus, the court's determination that defendant's assaults

8

on elderly women were done "out of violence and control," is supported by substantial evidence. Moreover, all 20 of defendant's underlying convictions support a determination that defendant was, at that time, under current law, a violent felon. (See §§ 667.5, subd. (c)(9) [robbery is a violent crime], (15) [assault of another with intent to commit mayhem, rape, sodomy, oral copulation are violent crimes], (21) [any burglary of the first degree committed when a person, other than an accomplice, was present are violent crimes].)

Furthermore, a review of defendant's voluminous administrative record while incarcerated supports the court's determination that defendant continued to display a strong inclination toward sexual violence. By our count, between September 10, 2013, and May 11, 2017,[6] defendant suffered nearly three dozen administrative determinations of guilt for various rules infractions while incarcerated, the overwhelming majority of which involved calling attention to himself by exhibiting his penis to female staff members, masturbating, and making eye contact with those staff members; several additionally involved refusing to stop and calling those staff members' names and/or threatening them.

> [6] Conspicuously absent is any record of defendant's behavior while incarcerated between his sentencing on March 18, 2005, and his first rules violation contained in the administrative record on September 10, 2013.

As did the court below, we summarize some of the worst violations: On May 12, 2014, at approximately 7:30 p.m., a certified nursing assistant making her rounds shined a light in defendant's cell;[7] defendant had his smock removed and his blanket covering only his legs; defendant made eye contact with the nurse and stroked his penis.

9

[7] Defendant appears to have spent the bulk, if not the entirety, of his time incarcerated in what has been variously described in the record as the Mental Health Crisis Bed Unit, Mental Health Services Delivery System, Mental Health Crisis Bed, and the Correctional Treatment Center. Defendant was on suicide watch for at least a portion of this time as well.

After the supervising nurse informed defendant she was filing a rules report violation, defendant yelled continuously for hours, in portions, threatening the supervising nurse who wrote him up. Defendant yelled, "'Fuck you, [supervising nurse].'" "'Fuck you, I am going to get you.'" "'You stupid bitch . . . .'" "'[Supervising Nurse], suck my dick, swallow my cum.'" "'Hey [supervising nurse] come suck my dick. [Supervising nurse] is a stupid, stupid bitch. [Supervising nurse] is crying, red headed bitch. That bitch is going to bow down to me. You, [supervising nurse], are a piece of shit, go fuck yourself, and suck my dick.'" Notably, defendant incurred a third rules report violation later that day for again masturbating in front of the certified nursing assistant performing cell checks.

On December 14, 2014, a psychiatric technician witnessed defendant masturbating underneath a blanket. The technician ordered him to stop; defendant refused. Defendant yelled at the technician: "'[W]hat bitch[?]'" "'Fuckin Cunt,'" "'Weird as[s] Bitch,'" and "'Bitch.'"

On July 16, 2016, defendant tapped on the door to gain the suicide precaution observer's attention; when she looked to see what he was doing, she saw defendant standing at the cell door without his smock on, masturbating, and staring directly at her. On June 3, 2017, while on the phone, a certified nurse's assistant

10

noticed someone attempting to get her attention. She looked up and noticed defendant standing on the toilet in his cell, waving his hand trying to get her attention, and stroking his erect penis while making eye contact with her. She ordered him to stop; defendant started waving his penis around; he said, "'you know you like this dick, don't be a bitch and write me up.'" "'[F]uck you[,] you stupid bitch . . . . I told that nurse you're not a [victim,] you're a whore.'" As the court aptly noted, "there are more" such incidents.

Although prison officials referred many of the rules report violations for prosecution, personnel from the deputy attorney's office overwhelmingly refused to prosecute. Nonetheless, defendant appears to have been convicted of indecent exposure on July 1, 2010, while he was incarcerated. Moreover, defendant had been deemed to have had an active history of aggression towards staff, which included threats of violence and self-admitted claims of mutual combat toward other inmates. Furthermore, on multiple occasions, "mechanical restraints" were required for defendant's transportation, in some cases due to the danger defendant was deemed to pose to others.

Thus, the court acted within its discretion in determining that defendant's conduct in prison involved attempts to "exercise control over people who don't have an option. It looks like they're women who are unable to leave or otherwise to avoid the circumstances, and that is remarkably similar to the circumstances of the burglaries and sexual assaults . . . ." Defendant's behavior, which resulted in numerous guilty adjudications regarding rules violations while incarcerated, reflected attempts to control and sexually expose himself to female staff members to the greatest

11

extent that he was able; in other words, defendant's incarceration, his placement in a cell and shackles, were inferentially the only things restricting him from committing actual sexual violence against staff members. As the court below noted, if released "there is substantial evidence to believe that nothing would change; that he does present a danger—unreasonable risk of danger to society if he were to be released." The court acted within its discretion in determining that defendant would pose an unreasonable risk of danger to society if he were to be released.

Defendant maintains that the court's statement that defendant's acts of exposing himself to prison personnel were, in and of themselves, acts of violence, reflecting the court misunderstood the appropriate legal standard required to deny the requested relief. He contends the court's statements would include conduct which is offensive, but not violent. We would agree with defendant that the incidents of indecent exposure while incarcerated were not in and of themselves "violent." Nevertheless, those acts, when viewed in context with defendant's prior criminal history, inferentially reflect a desire to commit sexual violence against women. The court's denial of defendant's petition was within its discretion.

Gonzalez, 2019 WL 1760554 at *2-5. Petitioner filed a Petition for Review of with the California Supreme Court, which the court denied on July 10, 2019. Appellate Courts Case Information at https://appellatecases.courtinfo.ca.gov.[1]

---

[1] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court takes judicial notice of relevant state and federal court records available electronically. See Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of opinion and briefs filed in another proceeding); United States ex rel. Robinson Rancheria Citizens

## II.

## PETITIONER'S CLAIMS

As noted, Petitioner asserts a single claim, alleging his Fourteenth Amendment rights were violated by an "Order denying a Petition to Recall a Sentence pursuant to Penal Code 1170.126 . . . ." Pet at 5.

## III.

## DISCUSSION

In 2012, California voters approved Proposition 36, the Three Strikes Reform Act. This law afforded prisoners serving Three Strikes sentences for non-violent and non-serious felonies the opportunity to petition the superior court to re-sentence them as two-strikers. Cal. Penal Code § 1170.126. The statute, however, explicitly gave trial courts the discretion to refuse to resentence any prisoner whose release "would pose an unreasonable risk of danger to public safety." Cal. Penal Code § 1170.126(f).

Petitioner challenges the trial court's discretionary ruling, affirmed on appeal, that Petitioner posed an unreasonable risk of danger to the public under Proposition 36. This claim is not cognizable in federal habeas corpus proceedings because it is a purely state-law claim. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) (holding mere errors in the application of state law are not cognizable on habeas corpus); Williams v. Borg, 139 F.3d 737, 740 (9th Cir. 1998) (holding federal courts in state habeas cases address only federal constitutional violations, not abuse of discretion under state law); see also Sandoval v. CSP Sacramento, 2019 WL 1438554, at *2 (E.D. Cal. Apr. 1, 2019) (rejecting prisoner's claim that state court should have resentenced him under Proposition 36 because "alleged error of state sentencing law is not

_____

Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue" (citation omitted)).

13

cognizable in a federal habeas proceeding"); <u>Pena Acevedo v. Sec'y of Corr.</u>, 2019 WL 2030152, at *5 (C.D. Cal. Mar. 28, 2019) ("[C]ourts within the Ninth Circuit have consistently held that whether an inmate is eligible for resentencing under Proposition 36 is a state-law question that presents no cognizable federal claim on habeas review."); <u>Foster v. Martel</u>, 2019 WL 1263930, at *9 (C.D. Cal. Jan. 30, 2019) (finding claim that state court erred in determining prisoner was an "unreasonable risk of danger to public safety" under Proposition 36 was not cognizable in federal habeas corpus proceeding).

To the extent Petitioner alleges the state court's discretionary determination under state law constituted a federal due process violation, a federal habeas petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process." <u>Langford v. Day</u>, 110 F.3d 1380, 1389 (9th Cir. 1997) (as modified). As explained, federal habeas relief is available only for violations of the Constitution, laws, or treaties of the United States and does not lie for errors of state law. 28 U.S.C. § 2254(a); <u>McGuire</u>, 502 U.S. at 67; <u>see also</u> <u>Brown v. Curry</u>, 451 F. App'x 693 (9th Cir. 2011) ("state law sentencing errors, if any, are not cognizable on habeas review"); <u>Rhoades v. Henry</u>, 611 F.3d 1133, 1142 (9th Cir. 2010) (violations of state sentencing law are not cognizable on federal habeas review). "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." <u>Christian v. Rhode</u>, 41 F.3d 461, 469 (9th Cir. 1994). To state a cognizable federal habeas claim based on an alleged state sentencing error, a petitioner must show that the alleged error was "so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." <u>Richmond v. Lewis</u>, 506 U.S. 40, 50 (1992) (citation omitted). Petitioner has made no such showing here; as set forth above, the record in the state court appears to the contrary.

On March 17, 2020, the assigned magistrate judge issued an order advising Petitioner of the above defects, ordering Petitioner to show cause, in writing, within 30 days, why the action should not be dismissed, and cautioning Petitioner that a failure to respond could result in dismissal of the action. Dkt. 7 ("Order"). Petitioner did not timely respond to the Order or seek additional time in which to do so.

For the foregoing reasons, Petitioner is not entitled to relief and the Petition must be dismissed.

## IV.

## CONCLUSION AND ORDER

IT IS THEREFORE ORDERED THAT, under Habeas Rule 4, this action be dismissed with prejudice and judgment be entered accordingly.

Dated: May 5, 2020

R. GARY KLAUSNER
United States District Judge

Presented By:

JOHN D. EARLY
United States Magistrate Judge

15